2009 BNH 004
_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                      Bk. No. 04-10528-MWV
                                                                                            Chapter 7
BeaconVision Incorporated,
        Debtor

Michael S. Askenaizer, Chapter 7 Trustee,
Brian D. Taylor, and
Richard Cricenti,
        Plaintiffs

v.                                                                                          Adv. No. 05-1084-MWV

Michael A. Wyatt,
Weller Financial Resources, Inc.,
CSI/The Stallings Group, LLC,
Christopher Stallings,
Larry Stallings,
Victoria Moate,
New Century Title Abstract,
Stanley Moate,
Gary Gordon, and
Gordon Properties, Ltd.,
        Defendants


Gordon Properties, Ltd.,
        Cross-Claimant
v.

Stanley Moate,
Victoria Moate, and
New Century Title Abtstract,
        Cross-Defendants


*J. Daniel Marr, Esq.*
*HAMBLETT & KERRIGAN, PA*
*Attorney for Plaintiffs*

*Grenville Clark, Esq.*
*GRAY, WENDELL & CLARK, PC*
*Attorney for Defendants Michael A. Wyatt*
*and Weller Financial Resources, Inc.*

*CSI/The Stallings Group, LLC*
PRO SE
*Christopher Stallings*
PRO SE

*Larry Stallings*
PRO SE

*Michael C. Palermo, Esq.*
BOYLE, MORRISSEY & CAMPO, PC
*Attorney for Defendants Victoria Moate,*
*New Century Title Abstract, and Stanley Moate*

*Jennifer Rood, Esq.*
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
*Attorney for Defendants Gordon Properties, Ltd.,*
*and Gary Gordon*

## MEMORANDUM OPINION

The Court has before it three matters: (1) the amended complaint filed by Michael Askenaizer, as Chapter 7 trustee for BeaconVision Incorporated (the "Debtor"), Brian D. Taylor, and Richard Cricenti (the "Plaintiffs"), asserting fifteen counts against ten defendants for various claims under New Hampshire law and the Bankruptcy Code;[1] (2) the cross-claim by Gordon Properties, Ltd. ("Gordon Properties"), against Victoria Moate, New Century Title Abstract, and Stanley Moate (the "New Century Defendants"); and (3) the New Century Defendants' motion for a judgment as a matter of law on all counts against them brought under Federal Rule of Civil Procedure 52(c), made applicable to the instant case pursuant to Federal Rule of Bankruptcy Procedure 7052(c). Beginning February 15, 2007, the Court held a three-day trial and took the matters under advisement.

---

[1] Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

- 2 -

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The Debtor was a New Hampshire corporation in the business of software development and consulting. Daniel G. Magni served as its president. Sometime in 2003, the Debtor negotiated with Weller Financial Resources, Inc. ("Weller"), to procure a $2 million loan. Weller was a New Jersey corporation, and Michael A. Wyatt ("Wyatt") was its president at that time. As part of the deal, the Debtor was to make a $200,000 deposit into the escrow account owned by New Century Title Abstract ("New Century"). New Century is a New Jersey company owned by Victoria Moate ("Moate"). Stanley Moate is Moate's husband and was listed as her partner on New Century's website. To raise capital for the deposit, the Debtor sold its stock to Jennifer Hoyda and plaintiffs Brian D. Taylor and Richard Cricenti for $200,000. Both Taylor and Cricenti knew of the loan negotiations before they invested in the Debtor. On April 14, 2003, the Debtor transferred the said $200,000 into New Century's escrow account (the "Escrow Account"). That following day, on April 15, 2003, the Debtor and New Century executed the "Lender's Escrow Instructions" (the "Escrow Instructions"), which listed terms and conditions relating to the $200,000 deposit, the issuance of an insurance binder, and a $2 million loan.     On April 16, 2003, Moate, acting in her capacity as New Century's owner and escrow agent, disbursed the deposit to three parties unrelated to the Debtor at Weller's instruction. She disbursed $150,000 to Gordon Properties, $35,000 to Weller, and $15,000 to P. Atsma. Gordon Properties was a Texas limited

partnership in the business of building custom homes that is no longer operating.  Its two limited partners were Gary and Jill Gordon.  Although neither the loan nor the insurance binder materialized, the $200,000 was not returned to the Debtor.

On February 19, 2004, the Debtor filed for bankruptcy protection under chapter 7 of the Bankruptcy Code.  On May 24, 2005, the Plaintiffs commenced the instant adversary.  On September 2, 2005, the Plaintiffs filed a motion for default judgment against CSI/The Stallings Group, LLC ("CSI"), and Christopher Stallings.  The Court held a hearing on the motion on October 4, 2005, and granted the motion.  On November 22, 2005, the Court entered a default judgment against Larry Stallings.

## DISCUSSION

The Plaintiffs' amended complaint asserts fifteen counts against ten defendants.  Of those counts, the Plaintiffs' post-trial memorandum abandoned Count VIII against Weller and Wyatt (the "Weller Defendants"), Counts IX through XII against CSI, Christopher Stalling, and Larry Stalling (the "CSI/Stallings Defendants"), and Counts VI and XIII against Gordon Properties.  (Pl.'s Trial Memorandum 8.)  The Court considers the said counts waived.  In addition, as default judgments have been entered against the CSI/Stallings Defendants, the Court now has before it nine counts against the remaining defendants.  Those counts, in the order discussed below, are as follows: (1) Count VII asserting an avoidance claim under the Bankruptcy Code against Gordon Properties; (2) Count V for conversion against the Weller Defendants, the New Century Defendants, and Gordon Properties; (3) four counts against the Weller Defendants for breach of contract, negligent misrepresentation, fraud, and consumer fraud; (4) one count against the New Century Defendants for negligence; and (5) one count against Gary Gordon for fraudulent transfer under N.H. Rev. Stat. § 545-A ("NH RSA").  The Plaintiffs seek to recover $600,000 from the Weller Defendants, $200,000 plus allowable interest and costs from the New Century Defendants, $150,000 plus allowable interest and costs from Gordon Properties, and $150,000

from Gary Gordon to the extent that Gordon Properties cannot or does not pay any judgment against it. The Court will discuss Gordon Properties' cross-claim and the New Century Defendants' Rule 52(c) motion, together, with the Plaintiffs' amended complaint.

I. **Count VII: Preference Avoidance**

The Court begins its discussion with Count VII, which seeks to avoid and recover the $200,000 deposit that New Century wired to Gordon Properties from the "defendants who received it" pursuant to 11 U.S.C. §§ 548 and 550. (Compl. ¶ 109.) To start, the Court notes that on April 6, 2006, it summarily found that the $200,000 the Debtor transferred into the Escrow Account was an avoidable fraudulent transfer under section 548(a)(1).[2] See BeaconVision Inc. v. Wyatt (In re BeaconVision Inc.), 340 B.R. 674, 677-78 (Bankr. D.N.H. 2006) (finding that the $200,000 was "an interest of the debtor in property[,]" that the transfer was made within one year of the Debtor's petition date, that the Debtor received less than reasonably equivalent value, and that the Debtor was insolvent at the time of the transfer). After finding that New Century was merely a "conduit" and not the "initial transferee" under section 550, the Court left open the issue of which defendant was the "initial transferee" under section 550(a)(1). In re BeaconVision, 340 B.R. at 679.

In their post-trial memorandum, the Plaintiffs argue that Gordon Properties is the initial transferee based on the Weller Defendants' admission that they had no ownership interest in the Escrow Account when it contained the $200,000. The Plaintiffs argue that the Weller Defendants' failure to answer the Plaintiffs' request for admissions renders such fact admitted for all purposes, rendering Gordon Properties the initial transferee under section 550(a)(1). However, an admission is binding upon the party against whom it is sought and not binding on other parties. Riberglass, Inc. v. Techni-Glass Industries, Inc., 811 F.2d 565, 566-67 (11th Cir. 1987); Alipour v. State Auto. Mutual Ins. Co., 131 F.R.D. 316 (N.D. Ga.

---

[2] Section 548(a)(1) provides that a trustee "may avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . was insolvent on the date that such transfer was made . . ." 11 U.S.C. § 548(a)(1).

- 5 -

1990).  Thus, the alleged admission is not binding against Gordon Properties, and the Court will discuss the initial transferee issue accordingly.  Further, the Court notes that the Plaintiffs did not allege that Gordon Properties was "the entity for whose benefit such transfer was made" under section 550(a)(1) or an "immediate or mediate transferee" under section 550(a)(2).  As such, the issue before the Court is which party is the "initial transferee" of the $200,000 deposit under section 550(a)(1).

Section 550 in relevant part provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

§ 550(a).  "The trustee 'may always recover from the initial transferee regardless of [that transferee's] good faith, value, or lack of knowledge of the voidability of the transfer.'"  In re Anton Noll, 277 B.R. 875, 878 (1st Cir. BAP 2002) (quoting Rupp v. Markgraf, 95 F.3d 936, 938 (10th Cir. 1996)) (modifications in original).  The initial transferee has "the burden of inquiry and the risk if the conveyance is fraudulent."  Bonded Fin. Services, Inc. v. European Am. Bank, 838 F.2d 890, 892 (7th Cir. 1988).

The Bankruptcy Code does not define "transferee" or  "initial transferee."  To determine the status of a transferee, "courts 'have uniformly followed' the test set forth in Bonded" known as the "dominion and control test."  In re BeaconVision, 340 B.R. at 678; see In re Anton Noll, 277 B.R. at 879 (stating that "[s]ince the Seventh Circuit's decision in Bonded, it has become well settled that transferee status under § 550(a)(1) necessitates the transferee's 'dominion and control'"); In re Hurtado, 342 F.3d 528, 533 (6th Cir. 2003) ("The test Bonded created has come to be known as the dominion-and-control test, and has been 'widely adopted'.").  The "dominion and control" test states that "the minimum requirement of status as 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes."  Bonded, 838 F.2d at 893  The dominion and control test refers to *legal*, not mere

-6-

physical possession of the property transferred.  In re Anton Noll, 277 B.R. at 879; In re BeaconVision, 340 B.R. at 678.  Legal dominion means the right to use the transferred property in any manner, whether it be to invest in "lottery tickets or uranium stocks."  Bonded, 838 F.2d at 894.  "[T]o be held to the standard of the initial transferee, a transferee must have the legal right to use the funds to whatever purpose he or she wishes . . . "  In re Anton Noll, 277 B.R. at 879; see Perrino v. Salem, Inc., 243 B.R. 550, 561 (D. Maine 1999) ("Under Bonded and its progeny, in order to exercise dominion over funds or assets, a party must be free to use transferred proceeds in a manner which allows for unfettered disposition of those funds.")  Limited discretion falling short of such financial freedom does not satisfy the "dominion and control" test.  Perrino, 243 B.R. at 561.

In the instant case, the Court finds that Weller, not Gordon Properties, was the initial transferee for the following reasons.  The Escrow Instructions provided that New Century "as Settlement Agent, [was] the Lender's agent for the limited purpose of carrying out [the escrow] instructions, and for no other purpose."  (Ex. 7.)  Thus, when the Debtor transferred the $200,000 deposit into the Escrow Account, Weller physically received the deposit because New Century was its agent.  See Richardson v. Federal Deposit Insurance Corp. (In re M. Blackburn Mitchell Inc.), 164 B.R. 117, 126 (Bankr. N.D.Cal. 1994) (providing that "receipt of the transferred property is a necessary element for that entity to be a transferee under § 550").  In addition, Weller had legal dominion and control over the $200,000 because upon receipt, Weller was free to use the said funds in any manner.  Weller had a security interest in the deposit and had the right to disburse them in any manner.  Although the Escrow Instructions imposed conditions on New Century for releasing the deposit, it also stated that "[t]hese instructions can only be modified with the advanced written approval of Weller Financial Resources, Inc."  (Ex. 7.)  The interpretation of a written document presents a question of law.  Woodstock Soapstone Co., Inc. v. Carleton, 585 A.2d 312, 315 (N.H. 1991).  The court will give the language its plain and ordinary meaning, Chadwick v. CSI, Ltd., 629 A.2d 820, 827 (N.H. 1993), and will "read the document as a whole[,]"  Daniel v. Hawkeye Funding, Ltd. P'ship, 843 A.2d 946, 948 (N.H. 2004).  The Court reads the Escrow Instructions as

providing Weller the right to unilaterally modify the instructions. Furthermore, Taylor testified that his understanding of the Escrow Instructions was that Weller could unilaterally modify the instructions:

> Q: And in this document, the only person or the only entity that can change or modify it is Weller Financial Resources, is that correct? I can refer you to paragraph 4, and it's the third sentence. You can take a moment certainly to read that.
>
> A: Yes, that's what it says.
>
> Q: Okay. So when you had read this document and relied on this document, you understood that only one person or entity could modify or change any aspect of it –
>
> A. Yes.
>
> Q: – and that was Weller, correct?
>
> A: That is correct.
> . . .
> Q: So if Weller decided they wanted to change the payees, they could do that under your reading of this document, right?
>
> A: Correct.

(Tr., Feb. 15, 2007, p.152-53.) Thus, Weller had a legal right to apply the $200,000 deposit in any manner, notwithstanding the conditions listed in the Escrow Instructions, and exercised such right by instructing New Century to disburse the deposit to itself and two other entities unrelated to the Debtor. Accordingly, Weller was the initial transferee, and Count VII is granted against Weller.

**II.     Count V: Conversion**

Count V asserts a conversion claim relating to the $200,000 deposit against the Weller Defendants, the New Century Defendants, and Gordon Properties. Conversion occurs when a defendant intentionally exercises dominion over the plaintiff's property that is inconsistent with the plaintiff's rights to immediate possession. Pleasant Valley Campground, Inc. v. Rood, 411 A.2d 1104, 1106 (N.H. 1980). In determining whether a defendant's conduct is "so inconsistent" to be actionable, courts have considered "the extent and duration of the actor's exercise of dominion and control, his intent to assert a

right in fact inconsistent with the other's right of control and his good faith." Muzzy v. Rockingham County Trust Co., 309 A.2d 893, 894-95 (N.H. 1973); LFC Leasing & Fin. Corp. v. Ashuelot National Bank, 419 A.2d 1120, 1121 (N.H. 1980).

### A. The Weller Defendants

The Court begins by finding that Wyatt is not liable for any of the counts asserted against him individually. It is uncontroverted that Weller is a New Jersey corporation and that Wyatt was Weller's president during the events arising out of the $2 million loan negotiations. The document entitled "Loan Commitment," dated April 9, 2003 (the "Commitment Letter"), indicates Weller as the "Lender," the Debtor as the "Borrower," and Wyatt as Weller's president. (Ex. 4.) The Escrow Instructions also identifies Weller as the lender and makes no reference to Wyatt. (Ex. 7.) Further, Wyatt as "President/CEO" of Weller sent the disbursement instructions to New Century. (Ex. 8.) The Plaintiffs did not otherwise produce evidence to show that Wyatt acted in any other capacity in the events related to the loan negotiations. Thus, the Court will discuss the Plaintiffs' claims in relation to Weller only.

Next, the issue in this matter is whether Weller is liable for conversion. The Debtor made the $200,000 deposit in connection with some commitment letter it received and for the purpose of ultimately securing the alleged $2 million loan. (See Weller's Ans. ¶ 26.) No loan ever closed. There was no evidence that the $200,000 was a non-refundable deposit. Thus, the Plaintiffs had a right to immediate possession of the funds. Weller, however, intentionally exercised dominion and control over the funds by instructing New Century to disburse them to itself and parties unrelated to the Plaintiffs two days after the funds were transferred into the Escrow Account. (See Ex. 8.) Such conduct was clearly inconsistent with the Plaintiffs' right to immediate possession, as it permanently deprived them of the funds. Nor is there any evidence in the record for Weller to avail itself to a good faith defense. The Court finds that Weller is liable for conversion and grants Count V as to Weller.

### B. The New Century Defendants

The Court finds that the Plaintiffs have failed to prove their conversion claim against the New Century Defendants. New Century did not exercise dominion or control over the $200,000 when it

-9-

disbursed them to the payees because it was acting under Weller's instruction. Its conduct was not "so inconsistent" to be actionable because New Century did not intend to assert a right in fact inconsistent with the Debtor, as it was carrying out its contractual obligations under the Escrow Instructions and in doing so, acted in good faith. See Muzzy, 309 A.2d at 894-95. Thus, Count V is denied as to the New Century Defendants.

### C. Gordon Properties

The Court also finds that the Plaintiffs have failed to prove that Gordon Properties is liable for conversion because it did not know that the Debtor had a competing interest in the $150,000 it received from New Century. At the time of the transfer, the Gordon Defendants were unaware of the Debtor. Although the wire transfer confirmation received by Gordon Properties from New Century contained the notation "REF: BEACONVISON" in small print (Ex. 13), both Gary and Jill Gordon testified that they had not seen that confirmation until the commencement of this adversary proceeding. (Tr., Feb. 16, 2007, p. 47-48, 114-16.) Further, even if they had, such notation would have been insufficient to put Gordon Properties on notice of a competing claim. In addition, Gordon Properties had no communication from New Century regarding the wire transfer. Jill Gordon testified that she did not receive any communication regarding the Debtor from Moate, Cricenti, or Taylor. (Tr., Feb. 16, 2007, p. 115, lines 9-14.) As such, Gordon Properties did not intentionally act in a manner inconsistent with the Plaintiffs' immediate right to possession, and Count V is denied with respect to Gordon Properties.

### III. The Weller Defendants

Count I asserts a breach of contract claim, Count II asserts a negligent misrepresentation claim, Count III asserts a fraud claim, and Count IV asserts a consumer fraud claim under N.H. Rev. Stat. § 358-A against the Weller Defendants.[3] As discussed earlier, the Court will consider these counts as relating to Weller only.

---

[3] As Weller does not dispute the choice of law, the Court will discuss the said counts under New Hampshire law.

-10-

### A. Count I

In Count I, the Plaintiffs argue that the Commitment Letter is a binding contract that obligated Weller to provide the Debtor a $2 million loan and close upon the loan within thirty banking days after receipt of the $200,000 deposit. Weller denies that the Commitment Letter is a binding agreement between the parties on the grounds that the signature on the document does not belong to Wyatt. It further argues that the Commitment Letter is not the operative loan agreement concerning the Debtor. It alleges that a different commitment letter dated April 10, 2003, executed by the Debtor and the CSI/Stallings Defendants embodies the operative loan agreement. That commitment letter is not in the record. The issue in this matter is whether the signature on the Commitment Letter was Wyatt's signature, and if not, whether there is other evidence of a binding loan agreement between the parties.

"Offer, acceptance, and consideration are essential to contract formation." Tsiatsios v. Tsiatsios, 663 A.2d 1335, 1339 (N.H. 1995). "A meeting of the minds must occur before a contract is formed." Estate of Younge by Bank of New England, N.A. v. Huysman, 506 A.2d 282, 284 (N.H. 1985). The intent of the parties is determined by an objective standard, not by actual mental assent. Id. A signature, although not conclusive, is strong evidence of whether two parties mutually reach an agreement. Chemical Bank v. Rinden Professional Ass'n, 498 A.2d 706, 711 (N.H. 1985).

Here, no witness at the trial could verify that the signature on the Commitment Letter belonged to Wyatt. Moate was not familiar with his signature. (Tr., Feb. 15, 2007, p. 86.) Neither Magni nor Cricenti could identify his signature. (Tr., Feb. 16, 2007, p. 197-98 & Tr., Feb. 26, 2007, p. 96.) Counsel for the Plaintiffs conceded that the signature on the Commitment Letter looked substantially different from that on a different document in the record (Ex. 35).[4] (Tr., Feb. 15, 2007, p. 180.) Further, the Escrow Instructions referred to a different commitment letter. Specifically, it instructed New Century to disburse the $2 million loan proceeds "[i]n accordance with attached loan commitment letter of April 10,

---

[4] With the parties' consent, the Court indicated that it would look at both signatures. (Tr., Feb. 15, 2007, p. 180.)

2003." (Ex. 7.)  The Commitment Letter is dated April 9, 2003.  Thus, the record supports Weller's defense, and the Court concludes that the signature dispute raises doubt as to whether the Commitment Letter is a valid contract.

Nonetheless, the Court finds that there is sufficient evidence in the record to prove that an agreement for the $2 million loan existed between the parties.  Magni testified that he went to New Jersey and met directly with Wyatt at least two times concerning the loan.  (Tr., Feb. 15, 2007, p. 203)  Cricenti testified that before he executed the stock purchase agreement with the Debtor, the Debtor "had gotten at least a verbal commitment that [Weller] was good to go on the loan."  (Tr., Feb. 26, 2007, p. 6.)  On April 14, 2003, the Debtor made the $200,000 deposit into the Escrow Account, which Magni, Taylor, and Cricenti testified was to be applied for the purchase of an insurance binder.  On April 15, 2003, the Debtor executed the Escrow Instructions with New Century.  The Escrow Instructions identified Weller as the lender.  The Escrow Instructions also instructed New Century to "disburse the $2,000,000 loan proceeds upon the 30th banking day after issuance of Insurance Binder unless given instructions to release earlier by Lender."  (Ex. 7.)  The Court notes that Wyatt did not appear to testify about the signature dispute or whether an agreement existed between the two parties.  Thus, the Court concludes that a $2 million loan agreement existed between the Debtor and Weller; the Debtor, Taylor, and Cricenti paid adequate consideration in the amount of $200,000 to Weller; and the Plaintiffs suffered damages in the same amount because the funds were disbursed to third parties.  By failing to close on the loan, the Court finds that Weller breached the agreement and is liable to the Plaintiffs.  As such, Count I is granted.

      **B.**      ***Count II***

Count II asserts a negligent misrepresentation claim.  "The essential elements of negligent misrepresentation are a negligent misrepresentation by the defendant of a material fact and justifiable reliance by the plaintiff."  Ingaharro v. Blanchette, 440 A.2d 445, 447 (N.H. 1982) (citation omitted).  The mere breach of a promise will not support an action for misrepresentation because a promise "is not a

statement of fact" but it "can imply a statement of material fact about the promisor's intention and capacity to honor the promise." Hydraform Products Corp. v. American Steel & Aluminum Corp., 498 A.2d 339, 347 (N.H. 1985).

The Court denies this count because the Plaintiffs failed to prove that the Weller Defendants made affirmative statements of fact upon which they relied. The Plaintiffs allege that "Wyatt and Weller affirmatively represented to the Debtor that it could loan the $2 million if the plaintiffs, amongst other things, paid them $200,000" and that they relied upon such representation by among other things, transferring the $200,000 into the Escrow Account. (Compl. ¶¶ 58, 61.) The primary evidence produced by the Plaintiffs of such statements is the Commitment Letter.[5] (Ex. 4.) Prior to the Escrow Account deposit, the Debtor and its officers had little communication with the Weller Defendants.[6] Although Magni spoke with Wyatt in person and by phone several times, he did not give testimony identifying affirmative statements by Weller. In fact, he testified that the Plaintiffs "did not have a . . . good faith estimate disclosure provided to [them]" regarding the terms of the loan prior to their receipt of the Commitment Letter. (Tr., Feb. 15, 2007, p. 208.) Thus, the success of this claim depends on the statements contained in the Commitment Letter. However, as discussed earlier, the said document is not credible because of the signature dispute. The Plaintiffs have not otherwise produced evidence to show that the statements contained in the Commitment Letter were affirmatively extended by the Weller Defendants. Thus, the Plaintiffs failed to prove this claim, and Count II is denied.

---

[5] Taylor invested $50,000, and Cricenti invested $125,000 in the Debtor, which constituted the funds that were transferred into the Escrow Account. Both plaintiffs testified that they relied on the Commitment Letter before investing in the Debtor. (Tr., Feb. 15, 2007, p.122 & Tr., Feb. 26, 2007, p. 7.)

[6] Taylor testified that he learned of the possibility of a loan with Weller in March 2003 and did not initially have any understanding of what the loan was for and for how much. (Tr., Feb. 15, 2007, p. 121.) Magni testified that he met with Wyatt several times before he received the Commitment Letter, but he did not testify as to any specific statements of fact upon which he relied.

   C. *Count III*

In Count III, the Plaintiffs allege that the Weller committed fraud by making false statements when it promised to make the $2 million loan and close on the loan.  To prevail on a claim for fraud, "the plaintiff must prove that the defendant intentionally made material false statements to the plaintiff, which the defendant knew to be false or which he had no knowledge or belief were true, for the purpose of causing, and which does cause, the plaintiff reasonably to rely to his detriment."  Caledonia, Inc. v. Trainor, 459 A.2d 613, 617-18 (N.H. 1983) (citing Hall v. Merrimack Mut. Fire Ins. Co., 13 A.2d 157, 160 (N.H. 1940)).  "The essence of fraud is a fraudulent misrepresentation."  Jay Edwards, Inc. v. Baker, 534 A.2d 706, 709 (N.H. 1987).  "Fraud must be proved by clear and convincing evidence, but such proof may be founded upon circumstantial evidence."  Caledonia, 459 A.2d at 618.  For the reasons discussed above, the Court finds that the Plaintiffs failed to prove that the Weller Defendants made affirmative statements of fact upon which the Plaintiffs relied, and Count III is also denied.

   D. *Count IV*

Finally, Count IV asserts a claim for violation of NH RSA § 358-A for unfair and deceptive trade practices.  Section 358-A:2 provides that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state" and enumerates some unfair methods of competition and unfair or deceptive acts.  NH RSA § 358-A:2.  For "conduct to run afoul of the statute, it 'must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'"  Hobin v. Coldwell Banker Residential Affiliates, Inc., 744 A.2d 1134, 1141 (N.H. 2000) (citing Barrows v. Boles, 687 A.2d 979, 986 (N.H. 1996)).  The Plaintiffs' basis for this claim is that Weller intentionally misrepresented that they had $2 million to loan the Plaintiffs and that the latter suffered a loss of $200,000 by relying upon such misrepresentation.  The Court denies this count because the Plaintiffs failed to prove misrepresentation by the Weller Defendants.  Further, the record does not otherwise evidence conduct rising to the "level of rascality" required under section 358-A:2.

### IV. The New Century Defendants

In Count XIV, the Plaintiffs assert a negligence claim against the New Century Defendants. The Gordon Defendants' have cross-claimed against Moate and New Century for negligent misrepresentation, and the New Century Defendants have moved for a directed verdict on both claims.

#### A. Count XIV

A defendant is negligent if she breaches a duty of care owed to the plaintiff and injures the plaintiff as a result of that breach. Walls v. Oxford Mgmt. Co., Inc., 633 A.2d 103, 104-05 (N.H. 1993). An escrow agent has a legal duty to comply strictly with the terms of the escrow agreement. Lowell-Light Mfg., Inc. v. FDIC, 848 F.Supp. 278, 283 (D. Mass. 1994). "The escrow agreement or instructions constitute the full measure of the obligation assumed by the escrow holder and owing to the parties." Schmid v. Nat'l Bank of Greece, S.A., 622 F.Supp. 704, 710 (D. Mass. 1985) (dismissing a negligence claim because the agent of the depository complied with disbursement terms of the escrow agreement).

The Plaintiffs argue that New Century had a duty not to release the $200,000 from the Escrow Account unless the insurance binder was received *and* the $2 million loan closed. However, any such duty changed and became redefined by Weller's disbursement instructions. As discussed earlier, Weller had the right to unilaterally change the escrow instructions. (Ex. 7.) Once Weller instructed New Century to release the deposit to the designated payees, New Century had a duty to comply with those instructions. Had New Century deviated from them, it would have been financially liable. Moreover, the Debtor acknowledged in the Escrow Instructions that New Century was the "Lender's agent for the limited purpose of carrying out the escrow instructions[.]" (Ex. 7.) Thus, the Court finds that New Century did not breach any duty by disbursing the deposit. As such, the Court denies Count XIV and grants the New Century Defendants' Rule 52 motion with respect to this claim.

#### B. The Gordon Defendants' Cross-claim

The Gordon Defendants assert a cross-claim against Moate and New Century for negligent misrepresentation. They argue that by failing to disclose the terms of the Escrow Instructions, New

-15-

Century made an affirmative representation that the $150,000 transferred to Gordon Properties were available. "The essential elements of negligent misrepresentation are a negligent misrepresentation by the defendant of a material fact and justifiable reliance by the plaintiff." Ingaharro, 440 A.2d at 447. To prevail on a claim for negligent misrepresentation, among other factors, "a special relationship must exist between '[a] representor and the person relying on the misrepresentation.'" Stillwater Condominium Ass'n v. Town of Salem, 668 A.2d 38, 40 (N.H. 1995) (citing Island Shore Estates Condominium Ass'n v. City of Concord, 615 A.2d 629, 632 (N.H. 1992)). "A special relationship exists, for instance, between contracting parties and may extend to third party beneficiaries of a contract." Stillwater Condominium Ass'n, 668 A.2d at 40. "[A] third-party beneficiary relationship exists if the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract." Plourde Sand & Gravel v. JGI Eastern, Inc., 917 A.2d 1250, 1255 (N.H. 2007) (internal quotations omitted) (citing Spherex, Inc. v. Alexander Grant & Co., 451 A.2d 1308, 1311 (N.H. 1982). The issue in this matter is whether the parties had a special relationship.

The record shows that there was no special relationship between New Century and Gordon Properties, and thus, the claim fails. Gordon Properties was not a party to the Escrow Instructions, and there was no separate agreement between it and New Century. As such, there was no contractual relationship between New Century and Gordon Properties. In addition, there was no third party beneficiary relationship between New Century and Gordon Properties, as the latter was not considered when the Escrow Instructions was executed. Thus, the cross-claim is denied.

**V.     Gary Gordon**

Count XV asserts a fraudulent transfer claim against Gary Gordon pursuant to NH RSA § 545-A:5 and Tex. Bus. & Com. Code Ann. § 24.006. The record is unclear as to whether New Hampshire or Texas law governs this claim. However, such issue is immaterial because both states have

adopted the Uniform Fraudulent Transfer Act and have similar laws relating to this claim.  See Duran v. Henderson, 71 S.W.3d 833, 837 (Tex. App. 2002).

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  NH RSA § 545-A:5(I); Tex. Bus. & Com. Code Ann. § 24.006.  A creditor may avoid a fraudulent claim to the extent necessary to satisfy the creditor's claim against the debtor.  NH RSA § 545-A:7(I)(a); Tex. Bus. & Com. Code Ann. § 24.008(a)(1).  Further, "the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less" from "the first transferee of the asset or the person for whose benefit the transfer was made[.]"  NH RSA § 545-A:8(II)(a); Tex. Bus. & Com. Code Ann. § 24.009(b).  The Plaintiffs have the burden of proving their case by a preponderance of the evidence.  Dahar v. Jackson (In re Jackson), 459 F.3d 117, 123 (1st Cir. 2006); Walker v. Anderson, 232 S.W.3d 899, 913 (Tex. App. 2007).

The basis for Count XV is Gordon Properties' transfer and expenditure of the $150,000 it received from New Century.  It is uncontroverted that Gordon Properties received the $150,000 from New Century and that the proceeds were expended in April 2003 on costs associated the real property located on 1803 Leeds Drive in Southlake, Texas (the "Leeds Drive Property"), including costs for supplies and payments to taxing authorities, subcontractors, and Worth National Bank for an interim interest construction loan.  (Ex. 302.)  The Plaintiffs argue that they can recover the said funds from Gary Gordon because he was the "person for whose benefit the transfer was made[.]"  See NH RSA § 545-A:8(II)(a); Tex. Bus. & Com. Code Ann. § 24.009(b).  They argue that Gary Gordon benefitted from the $150,000 expenditure because he owned the Leeds Drive Property and Gordon Properties had no contractual obligation to make the said payments.  In fact, Gary Gordon was the owner of the Leeds Drive Property and the obligor on the Worth National Bank loan in April 2003.  ((Tr., Feb. 16, 2006, p. 9, 26.)  However, around that time, Gordon Properties was contractually obligated to deliver the Leeds Drive

-17-

Property to Christopher Stallings. (Ex. 301.) As of April 15, 2003, Gordon Properties was a party to a purchase and sale agreement under which it was obligated to sell the Leeds Drive Property to Christopher Stallings.[7] (Ex. 301, 304.) Thus, Gordon Properties was obligated to ensure that the construction costs, loan payments, taxes, and subcontractor fees were paid for the sale to close. (Tr., Feb. 16, 2007, p. 59-60). As such, Gordon Properties expended the $150,000 for its own benefit and to satisfy its obligations, and Gary Gordon was not the person for whose benefit the transfers were made. Accordingly, Count XV is denied.

## CONCLUSION

For the reasons stated above, the Court grants Counts I, V, and VII against Weller for a total judgment of $200,000, and denies all remaining counts of the amended complaint. The Court further grants the New Century Defendants' Rule 52(c) motion and denies Gordon Properties' cross-claim.

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.

DATED this 20th day of January, 2009, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge

---

[7] Christopher Stallings did not close on the Leeds Drive Property, and in September 2003, Thornbury Custom Homes, a Texas corporation controlled by the Gordons, executed a purchase and sale agreement with Larry Stallings for the Leeds Drive Property. (Ex. 304.) Gary Gordon signed the agreement as Thornbury's agent. That sale did not close.